## C. H. & A. L. INGALLS v. VERNON V. VANCE.

### No. 91, Acts of 1884.    Lien.    R. L. s. 1977.

1.  Under No. 91, Acts of 1884, a mortgagor of personal property cannot create a lien which will be paramount to that of a mortgagee holding under a mortgage, previously executed and duly recorded, without the consent of such mortgagee.

2.  And, such consent will not be implied from the mere knowledge of such mortgagee that, after the execution of his mortgage, the property had been placed in the hands of a third party to be kept.

3.  Section 1977, R. L., is permissive, and under that section a mortgagee may cause either a part or all of the property to be sold, regardless of the amount of his mortgage debt.

This was an action of replevin, heard at the June Term, 1888, Rowell, J., presiding.   The court found the following facts :

Nov. 8, 1884, one M. executed and delivered to plaintiffs a chattel mortgage of certain live stock, which mortgage was duly recorded.   Afterwards M. delivered said live stock to the defendant to be kept for him on his farm in Danville.   Plaintiffs were subsequently notified of this transaction, to which they replied, all we claim is the amount of our mortgage debt.   More than thirty days after the condition of said mortgage had been broken, said mortgage debt not having been paid, plaintiffs sent an officer to the residence of defendant to take possession of said live stock and sell the same agreeably to R. L. s. 1977.  Defendant refused to deliver up said live stock and claimed a paramount right to the possession thereof, under No. 91, Acts of 1884, until his charges for keeping had been paid.   Whereupon plaintiffs replevied said live stock and caused the same to be sold agreeably to said section.

Defendant claimed that the officer had no right to sell more of said property than was necessary to satisfy plaintiffs' debt and costs, because the property was divisable, and claimed that he became a trespasser *ab initio*, because after paying said debt and costs from the avails of said sale, there remained in his hands

Ingalls *v.* Vance.

a balance of $86.81. On this state of facts, the court rendered judgment for the defendant, to which the plaintiffs except.

*George W. Cahoon,* for the plaintiffs.

No. 91, Acts of 1884, creates rights in derogation of the common law and should be construed strictly. *Howes* v. *Newcomb,* 5 N. E. R. 570, 88 ; *Rogers* v. *Currier,* 13 Gray, 129.

A mortgagor in possession has no power to create a lien that shall have priority of a duly recorded mortgage. Jones Chat-Mort. s. 472 ; *Sargent* v. *Usher,* 55 N. H. 287.

It is the very nature and essence of a lien, that, no matter in whose hands the property goes, it passes *cum onere. Burton* v. *Smith,* 13 Pet. 464.

The proceedings of the officer in selling the property under the mortgage were regular.

*A. F. Nichols* and *W. P. Stafford,* for the defendant.

Plaintiffs having learned that defendant was keeping the cattle, and having made no objection thereto, must be held to have consented to the agreement between defendant and Mrs. Green. Therefore plaintiffs had no right to possession as against defendant until defendant's charges for keeping had been paid, at least, from the time when plaintiffs first learned that defendant was keeping the cattle under said agreement.

The property having been divisible, and the officer having sold more of it than was necessary to pay the mortgage debt and costs, he became a trespasser *ab initio. Collins* v. *Perkins,* 31 Vt. 624; *Sutton* v. *Beach,* 2 Vt. 42 ; *Bond* v. *Wilder,* 16 Vt. 393 ; *Eaton* v. *Cooper,* 29 Vt. 444.

The opinion of the court was delivered by

ROYCE, Ch. J. The stock sought to be replevied in this case is claimed by plaintiffs under a mortgage of unquestioned validity and by defendant under an alleged lien for its keeping, founded on No. 91, Acts of 1884. This act is almost identical

in language with Pub. Stat. of Mass., chap. 192, s. 32 ; a statute
which has recently received a careful consideration and interpre-
tation by the Supreme Judicial Court of Massachusetts in a case
presenting, in this feature of it, facts almost precisely similar to
those of the case at bar. We refer to the case of *Howes* v. *Newcomb*,
5 N. E. Rep. 568. Such a statute as there stated is in
derogation of the common law and should be strictly construed.
That the law implies no such lien is recognized in this State in
the cases of *Cummings, Admx.* v. *Harris*, 3 Vt. 245, and *Wil-
lis* v. *Barrister*, 36 Vt. 220.

The title to this property was in the mortgagees at the time it
was placed by the mortgagor in charge of the defendant, and to
maintain a lien under the statute the latter should be required to
show that the property was brought to his premises or placed in
his care by, or with the consent of, the owner. It is contended
that such consent should be inferred from the fact that plaintiffs
allowed the stock to remain in defendant's care and keeping
after learning that it had been placed there by the mortgagor.
It is possible that such consent might be inferred from this fact
as would constitute the basis of a personal claim against them
for the price of such keeping ; but to say that it should operate
to create the statutory lien, to the impairment of the mortgage
security, would be to give the statute a forced and liberal, not
by any means a strict construction.

Neither can it be said that a consent, such as would satisfy
the statute, to the stock being placed in the defendant's care can
be implied from the circumstances of the transaction ; and upon
this point we cannot do better than to quote at some length from
the language of Knowlton, J., in *Howes* v. *Newcomb*, *supra.*
* * * " It is not contended that the plaintiff expressly agreed
to the horses being placed in the defendant's care. But undoubt-
edly an implied consent will answer the requirement of the law ;
and in every case of this kind, the inquiry is whether such
implied consent is found. That depends when animals are left
with a mortgagor by a mortgagee, not only upon the terms of

the express contract relating to them, but also upon all the cir-cumstances surrounding the transaction indicating the expecta-tion of the mortgagee as to the management of them by the mortgagor. If from these the mortgagee may be presumed to have understood that the mortgagor would take them to a stable-keeper to be boarded, and no objection was made, such consent should be implied. Otherwise it would not. It should be kept in mind that the purpose of a mortgage is to furnish security, and that the property is usually left with the mortgagor for his convenience, with an understanding that nothing shall be done or permitted by him to impair the security. An agreement which will defeat the purpose of the transaction should not be inferred or implied against a mortgagee without cogent evidence. A mortgage of horses, given to secure performance of an act in the distant future, is worthless, if the mortgagor may create a lien upon them by putting them out to be boarded. It is true the mortgagee must know they are to be fed, and that it will cost something to feed them. But that in itself is immaterial. The real question is whether he has reason to believe and does believe that they are to be boarded at a livery-stable, or kept by any one else than the mortgagor." And what was said to be true of horses in that case, that " keeping them in the personal care of the owner or his servants, upon his own premises, or in barns where he hires privileges and furnishes his own fodder, is the rule," is still more true in the case of farm stock in an agricul-tural state like Vermont. The mortgagees cannot be held to have consented from the circumstances of the transaction to the stock being put in the charge of the defendant or anybody else to be wintered. And defendant has no lien as against the plaintiffs.

It is claimed that the officer exceeded his authority in selling more of the mortgaged property at the foreclosure sale than suf-ficient to satisfy the mortgage debt with costs ; that because the property was in its nature divisable, after having sold enough to satisfy the debt with costs, he had no right to proceed further,

and by doing so became a trespasser *ab initio*. R. L. s. 1977 provides that the mortgagee may after thirty days from the time of condition broken "cause the mortgaged property, or part thereof, to be sold," etc. Under this clause he may elect to sell it all ; he cannot be restricted by the amount of the actual debt. The title to the whole is in him, and he must be left free to foreclose the mortgagor's equity in the whole in the method provided by law. The mortgagor's rights are sufficiently protected by the provision that the balance of the proceeds of the sale, after satisfying the mortgage debt with costs and expenses, and subsequent mortgages, if there be any, shall be paid over to him on demand.

*Judgment reversed, and judgment for plaintiffs for one cent damages and costs.*