COLQUITT & BAGGS, plaintiffs in error *vs.* D. W. KIRKMAN, defendant in error.

Whilst, as against the actual bailor, a livery stable keeper has a lien upon an article of property deposited with him for feed or storage, for his whole account against the depositor in the line of the livery stable business, yet, if the depositor be not the true owner of the particular article in question, or if there be a prior legal incumbrance upon it, the lien of the stable keeper is only good against the true owner or prior incumbrancer upon the article for the expense of feeding or taking care of that particular article.

Livery stable keeper's lien.   Money rule.   Before Judge STROZIER.   Dougherty Superior Court.   October Term, 1872.

Colquitt & Baggs held a mortgage upon certain personal property of one Charles O. Little, dated April 16th, 1870, to cover advances to be made by them, as factors and commission merchants during that year, not to exceed in all $1,000. By a supplemental instrument, dated June 26th, 1870, the provisions of said mortgage were made to apply to an additional advance of $1,024 62, and to any other advances that might be made by said mortgagees.   On the 12th of Novem-

ber, 1870, said mortgage was foreclosed and execution issued for $1,684 50, besides interest, which was levied upon twenty-two bales of cotton and upon two mules.

Upon December 1st, 1870, D. W. Kirkman foreclosed his lien, as a livery stable keeper, upon the above mentioned mules, for the sum of $195 78, and had the execution based upon said proceeding duly levied. On the same day he gave written notice to the sheriff to hold up all moneys that might arise from the sale of one of the mules, under the mortgage *fi. fa.* of Colquitt & Baggs, until it was decided by competent authority to whom the proceeds should be paid. On December 5th, 1870, a similar notice was given as to the proceeds of the other mule. One of the mules was sold for $156 00, and the other for $87 00, making together the sum of $243 00.

At the October term, 1872, a rule was sued out against the sheriff, at the instance of Kirkman, requiring him to show cause why he should not pay off his execution from the proceeds of the said two mules. The answer of the sheriff set up substantially the facts above stated. An issue was formed between Colquitt & Baggs, and Kirkman, which was submitted to a jury, who returned a verdict in favor of Kirkman for the sum of $156 00.

It appeared from the evidence that Little was indebted to Kirkman in the sum of $195 00; that one of the mules was in Kirkman's possession at the time of the levy and had been for about one month previous thereto; that there was due to him for the feeding and stabling of this mule $22 00; that the balance of the account was for buggies and vehicles hired to said Little, and for the feed of horses, but was in no way connected with said mules so levied on, except as above stated; that the other mule was in possession of Little at the time of the levy of the mortgage *fi. fa.* and was sent by the sheriff to Kirkman's stable for safe keeping; that the cotton levied on was in the seed, and after ginning, produced but seven or eight bales, which were taken for the rent of the place upon which they had been made and were not applied to the Colquitt & Baggs *fi. fa.*

Colquitt & Baggs moved for a new trial upon the following gounds, to-wit:

1st. Because the verdict of the jury is contrary to law.

2d. Because the verdict is contrary to the evidence.

3d. Because the verdict is contrary to the following charge of the Court: "that a livery stable keeper has a lien on horses or mules brought to his stable for feeding and stabling care, even though the party so bringing them has no title to said mules or horses, but that the extent and amount of said charges must be confined to the expenses of feeding and stabling of the specific articles."

4th. Because the Court erred in the following charge: "that in order to constitute a livery stable keeper's lien, the owner of said stable must have possession of the property in which the lien is claimed, and if he permits by his consent the property to go out of his possession, the lien is destroyed, unless the property is brought back again into the possession of said livery stable keeper, and in that event the lien is renewed and valid."

5th. Because the Court erred in refusing to give in charge the following written request, "that if the jury believed from the evidence that the lien of D. W. Kirkman was foreclosed since the date of the mortgage of Colquitt & Baggs, and that the possession by Kirkman of the mules was obtained since the date of the mortgage, then the mortgage lien of Colquitt & Baggs is prior and superior to the lien of Kirkman, and you will find in favor of Colquitt & Baggs."

6th. Because the Court erred in the following charge, "that the mortgage of Colquitt & Baggs takes lien upon the property therein mentioned from the date," without adding the following written request, " and is superior to the lien of a livery stable keeper upon a debt contracted subsequent to the date of the mortgage."

7th. Because the verdict is contrary to the following charge, "that if Colquitt & Baggs had a mortgage, duly recorded, on these two mules, and Kirkman had feed and stabling care of the same mules, he was entitled to recover for said expenses,

but the amount must be confined to the expenses occurring from feeding and taking care of said mules."

The motion for a new trial was overruled, and Colquitt & Baggs excepted, and assign error upon each of the aforesaid grounds.

WARREN & ELY, for plaintiffs in error.

JOSEPH ARMSTRONG, by brief, for defendant.

McCAY, Judge.

Under our Code, sections 2096, 2097, a livery stable keeper has a lien against all the goods of *his bailor* in possession of the livery-man, for *all* his reasonable charges, and even if the guest or bailor has no title to the article, he has a right to retain it even against the true owner until all the charges upon that particular article are paid. This is the plain meaning— nay, the express language of the Code—and we are at a loss to understand how the lien should be doubted, or how it should occur to any one that the lien of the livery-man for his general account could be good upon an article not in the power of the bailor to charge.

Under these sections it is clear that the livery-man has a lien upon the bailor's goods for his general account, but as the mule was under mortgage, duly recorded, the bailor could in no way put a lien on that except so far as to *preserve* it. That is the basis of this exception to the general rule. A horse must be fed, a wagon or buggy taken care of, even if it be in the hands of a thief, and the true owner is justly chargable with such necessities. The jury had no right to give the livery-man more than his charges on the one mule, nor more than that mule brought. The mortgage is paramount, except for the charges on each piece of property, and each piece must bear its own burden.

Judgment reversed.