## F. S. CASE, *Adm'r*, v. J. H. ALLEN.

AGISTER'S LIEN, *for Charges for Feeding and Wintering Cattle, Paramount to Lien of Prior Mortgage thereon.* A. gave to B., to secure a debt for the purchase money, a chattel mortgage on certain cattle, which mortgage contained the following stipulation: "And until default be made as aforesaid, or until such time as the said party of the second part shall deem himself insecure as aforesaid, the said party of the first part shall continue in the peaceable possession of all the said goods and chattels; all of which, in consideration thereof, he engages shall be kept in as good condition as the same now are, and taken care of at his proper cost and expense." Said mortgage was duly filed. Thereafter, A. placed the cattle in the possession of C., who was engaged in the business of feeding and wintering cattle, to be fed and cared for during the winter, and they were in fact fed and wintered by C. *Held*, That C. had a lien upon the cattle, for his reasonable charges for feeding and wintering, which was paramount to the lien of the mortgage.

### *Error from Morris District Court.*

REPLEVIN, brought by *Allen*, against *R. Case*, to recover possession of certain cattle. *R. Case* died before a trial was had, and *F. S. Case*, his administrator, was substituted in said cause. The district court, at April Term, 1877, gave judgment in favor of plaintiff, and *Case*, defendant, brings the case here on error. The facts are fully stated in the opinion, *infra*.

*Bradley & Nicholson*, for plaintiff in error.

*Vrooman & Bertram*, and *John W. Day*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: October 25th, 1875, one Forseman sold certain cattle to P. S. Roberts, and, to secure the payment, took a chattel mortgage on the cattle. This mortgage was filed for record in the office of the register of deeds of Morris county, November 2, 1875. The stipulation in the mortgage was:

"That if default shall be made in the payment of said sum of money, or any part thereof, or of the interest due thereon

at the time or times when by the condition of said obligation the same shall become payable, or if the said party of the second part shall at any time deem himself insecure, then and thenceforth it shall be lawful for the said party of the second part, his executors, administrators or assigns, or any authorized agent, to enter upon the premises of the said party of the first part, or any other place or places where said goods and chattels aforesaid may be, to remove and dispose of the same, and all the equity of redemption of the said party of the first part, at public auction or at private sale, to the person or persons who shall offer the highest price for the same. After satisfying the aforesaid debt and interest thereon, and all the necessary and reasonable costs, charges and expenses incurred, including reasonable attorneys' fees, out of the proceeds of said sale, he shall return the surplus to the said party of the first part, or his legal representatives; and if from any cause said property shall fail to satisfy said debt and interest aforesaid, said party of the first part hereby agrees to pay the deficiency; and until default be made, as aforesaid, or until such time as the said party of the second part shall deem himself insecure, as aforesaid, the said party of the first part shall continue in the peaceable possession of all the said goods and chattels, all of which, in consideration thereof, he engages shall be kept in as good condition as the same now are, and taken care of at his proper cost and expense."

Roberts, during November (the exact time in the month not appearing), turned the cattle over to defendant in error to winter, at an agreed price of five dollars per head. Defendant in error was a farmer, and engaged in the business of pasturing and feeding cattle. He kept the cattle until spring, under such contract. In the spring, Forseman, the mortgagee, indorsed the notes and assigned the mortgage securing them, to the intestate of plaintiff in error, who immediately took possession of the cattle without paying for their wintering. Defendant in error thereupon commenced this action. Upon the trial the district court instructed the jury that—

"If they found from all the evidence that said Roberts, after making said chattel mortgage, turned over to said Allen said cattle to winter, and agreed to pay him for such winter-

ing the sum of five dollars per head, and that said Allen did take possession of said cattle and winter the same in accordance with his contract, then he would be entitled to a lien upon said cattle for the amount due him for the wintering and keeping the same, and would be entitled to the possession of the same until such lien was satisfied; and if they so found, and further found, that Allen has never been paid the amount due for such wintering and keeping, and that he did not willingly give up the possession of the same, but that the same were forcibly taken from his possession without his consent by the said R. Case, he would be entitled to recover in this action — unless, however, they found that Allen looked to Roberts alone for his pay, and not to the cattle. But any agreement between Roberts and Forseman, that Roberts should keep said cattle without expense to him (Forseman), would not be binding upon Allen unless he knew of such agreement, and assented thereto."

This instruction presents the substantial question in the case. By it the lien of the mortgagee was subordinated to the lien of the agister. Was this error?

All parties were residents of Morris county, and chargeable with notice of the chattel mortgage from the time of filing, to wit, November 2, 1875. The lien of the mortgagee was prior in time, was created by contract, while that of the agister, later in time, arises out of the statute. Though the amount in controversy is small, yet the question is of some importance. It affects a great many of the smaller transactions of business. A buggy is taken to a shop for repairs; a horse is driven to a livery stable and left over night; a traveler brings his trunk and stops at a hotel: in all these cases a lien is given by statute. Suppose a prior chattel mortgage exists: must the statutory lien give way to the prior contract lien? Must a mechanic, a livery stable or hotel keeper always examine the register's office to see whether there be a chattel mortgage upon the property before receiving it for repairs or keeping? But the question is not free from difficulty: for can the value of a contract lien be diminished by any act of the promisor? Can he who has promised that the property shall to the extent of

its value be security to the mortgagee for a certain debt, subsequently cast upon it a lien which shall take precedence of his prior contract, and to that extent diminish the value of the mortgagee's security? It will be conceded that no subsequent contract lien can be placed upon the property to take precedence of the prior chattel mortgage, and to that effect is the case of *Bissell v. Pearce*, 28 N. Y. 252. But we think the district court rightly held that the agister's lien was paramount to the mortgage. The express stipulation in the mortgage, that the keeping of the mortgaged property should be at the expense of the mortgagor, is no more than the law would imply in the absence of any express agreement. The mortgagor retaining possession, must of course pay the expenses of the keeping. He is not simply an agent of the mortgagee. He can make no contract on behalf of, or which will create any liability against, the mortgagee: he acts on his own behalf. He is the owner, with the duties of owner and the powers of owner, except as limited by the restrictions of the mortgage. Unless the mortgagee, by express contract, assumes the expense of the keeping of the property, it rests upon him.

*Agister's lien for feeding and wintering cattle, paramount to lien of prior mortgage thereon.*

Now the lien of the agister is not the mere creature of contract: it is created by statute from the fact of the keeping of the cattle. The possession of the agister was rightful, and the possession being rightful, the keeping gave rise to the lien; and such keeping was as much for the interest of the mortgagee as the mortgagor. The cattle were kept alive thereby; and the principle seems to be, that where the mortgagee does not take the possession, but leaves it with the mortgagor, he thereby assents to the creation of a statutory lien for any expenditure reasonably necessary for the preservation or ordinary repair of the thing mortgaged. Such indebtedness really inures to his benefit. The entire value of his mortgage may rest upon the creation of such indebtedness and lien, as in the case at bar, where the thing mortgaged is live stock, and the lien for food.

And while it seems essential that this should be the rule, to protect the mechanic or other person given by statute a lien upon chattels for labor or material, the rule, on the other hand, will seldom work any substantial wrong to the mortgagee. The amount due under such liens is generally small —a mere trifle compared with the value of the thing upon which the lien is claimed. The work or material enhances or continues the value of that upon which the work is done or to which the material is furnished; and the mortgagee can always protect himself against such liens, or, at least, any accumulation of debt thereon, by taking possession of the chattel mortgaged.

Authorities directly in point are perhaps few, yet the following seem to bear more or less directly on the question: In *Johnson v. Hill*, 3 Starkie, 172, it appeared that one who had obtained wrongful possession of a horse took it to a livery stable keeper, and left it, and it was held that a lien existed in favor of the latter against the owner. In *Williams v. Allsup*, 100 Eng. C. L., p. 416, a shipwright who had done repairs on a vessel at the instance of the mortgagor, was given a lien paramount to that of the prior mortgage; and the same conclusion was reached in the case of *Scott, et al., v. Delahunt*, 5 Lansing, 372, in which the court, referring to and distinguishing the case of *Bissell v. Pearce*, supra, uses this language:

" The decision in that case is no authority against the rights of the plaintiffs to enforce their lien which the law gives, and which does not rest in contract with the mortgagor. I am clearly of the opinion, in a case like this, where the repairs are necessary for the preservation of the property, and the law gives the lien, the mechanic may lawfully retain possession and enforce his lien by action if the charges for repairs are not paid, even against a mortgagee claiming under a prior mortgage."

In the late work of Herman on Chattel Mortgages, p. 308, the author says:

" Where the owner of a mortgaged chattel places it in the hands of a mechanic for repairs which are necessary to put it

in condition for use, and the mechanic retains possession until his charges are paid, his lien is prior to and can be enforced against the mortgage, if the mortgage becomes due before the repairs are made and possession retained by the mechanic, where the mortgagee has never taken possession under his mortgage."

And in Brown's Admiralty, p. 204, in the case of *The St. Joseph*, Mr. Justice Withey thus states the law in reference to maritime liens:

"Strictly maritime liens have always held priority over mortgages, without reference to the period of time when they accrued, on the ground that it is as much for the interest of the mortgagee as for the owner that the ship should be kept in repair and supplied, to enable her to keep afloat and be in receipt of earnings; thus adding to the value of the mortgage security, as well as to the ability of the mortgagor or owner to pay the mortgage."

See also, *Brown v. Holmes*, 13 Kas. 492; *Colquitt, et al., v. Kirkman*, 47 Ga. 555.

It is probable that the amount of the agister's lien, as against the mortgagee, would be fixed, not by the contract with the mortgagor, but by the reasonable value of the services. Still, we think this presents no ground for disturbing the judgment, for the plaintiff testified that he considered the services worth the contract price, and there was no testimony to the contrary, and the attention of the court was not called to the matter, and the exception is to the charge of the court as a whole, and not to any specific portion of it. A similar answer is good to the objection that plaintiff was not engaged in the business of feeding and taking care of cattle, within the scope of the statute giving to such parties a lien.

The testimony does not leave it clear in our minds how many cattle were in fact wintered; but still there was testimony from which the jury might find the amount they did in fact find, and we cannot say that they erred. Upon the whole record, we see no error.

The judgment will be affirmed.

All the Justices concurring.