## GRUBB v. LASHUS.

No. 2421. Decided January 29, 1913 (129 Pac. 1029).

1. CHATTEL MORTGAGES—AGISTER'S LIEN—PRIORITY. Comp. Laws 1907, sec. 1401, provides that any livery stable keeper to whom a horse shall be intrusted for feeding shall have a lien thereon for the amount due therefor, and shall be authorized to retain possession until the amount is paid. *Held*, that such lien is, not prior in right to a prior recorded, valid chattel mortgage on the animal. (Page 257.)

2. CHATTEL MORTGAGES—VALIDITY—TERM—RENEWAL—AFFIDAVIT AND STATEMENT—FILING—FAILURE TO FILE—EFFECT. Comp. Laws. 1907, sec. 155, provides that a chattel mortgage, duly filed, shall be void as against creditors, and the mortgagee or subsequent purchasers or mortgagees in good faith, after a year from the filing thereof, unless within thirty days after the expiration of the year the mortgagee, his agent or attorney, shall file an affidavit and statement containing specific facts with reference to the debt, etc.; and section 156 declares that if the affidavit is made and filed before any purchase of the property shall be made or other mortgage or lien thereon it shall be valid to continue the mortgage in effect as if the same had been made and filed within the period prescribed. *Held*, that the affidavit and statement required by section 155 may be filed at any time subsequent to the expiration of the thirty days, provided they are filed before any rights have attached to the mortgaged property; time not being of the essence of the right, except where rights exist or are acquired on the mortgaged property before the thirty day period has expired. (Page 260.)

3. CHATTEL MORTGAGES—FILING—RENEWAL—NECESSITY. Where a chattel mortgage on a stallion was duly filed, and before the expiration of a year and thirty days after such filing the mortgagee took possession to foreclose his mortgage, plaintiff was not required thereafter to file an affidavit and statement required by Comp. Laws 1907, secs. 155 and 156, in order to keep the mortgage in force after the expiration of a year and thirty days, in order to render the mortgage enforceable as a prior lien on the horse to that of a livery stable keeper for board of the horse, subsequent to the recording of the mortgage. (Page 261.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by C. J. Grubb against George W. Lashus.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED.

*J. N. Kimball* and *S. T. Corn,* for appellant.

*Stephens, Smith & Porter* for respondent.

FRICK, J.

This was an action in claim and delivery to recover possession of a stallion of the alleged value of $540, which, it is alleged, was unlawfully detained from respondent by appellant after demand therefor had been duly made upon the latter.

The respondent's right to possession is based upon a chattel mortgage, which he alleged was executed, delivered, filed, and recorded as provided by the statutes of this state. The appellant denied respondent's right to possession and set up a counterclaim, in which he claimed the right to the possession of said stallion by reason of an agister's lien, which he alleged was in full force, for feeding and caring for said stallion at the request of the owners thereof, and which he claimed was a prior and superior lien upon said stallion. Respondent denied the allegations contained in the counterclaim

in his reply, and again alleged that his mortgage lien was prior in time and prior in right.

The controlling facts, which are practically undisputed, are, in substance, as follows: On the 20th day of February, 1911, respondent was the owner and in possession of the stallion in question; that on that day he sold the same to W. H. and Rhoda Hayes, who, to secure the purchase price thereof, on said day executed and delivered to respondent their two promissory notes, one for $200, payable to the order of respondent on the 1st day of August, 1911, and the other for $300, payable to respondent or order on the 15th day of October, 1911, both notes bearing interest at the rate of eight per cent., and payable at a particular bank in Ogden, Utah; that to secure the payment of said notes said purchasers also executed and delivered to respondent a chattel mortgage, whereby they mortgaged said stallion to him; that said mortgage was executed and filed in the recorder's office and recorded on the 27th day of February, 1911, in Weber County, Utah, as provided by law; that the appellant, at all the times aforesaid, was, and thereafter continued to be, engaged in the livery and feed business in Ogden, Utah; that on the 20th day of April, 1911, the purchasers of said stallion delivered the same to appellant to be kept, fed, and cared for by him, and then promised to pay him for keeping, feeding, and caring for said stallion at the rate of twenty dollars per month; that pursuant to said promise appellant did keep, feed, and care for said stallion from the 20th day of April, 1911, to and including the 16th day of March, 1912, and that there was a balance due and owing to appellant for keeping, feeding, and caring for said stallion from said purchasers amounting to the sum of $176.77; that said stallion was placed in the custody of appellant, and he kept, fed, and cared for the same during all of said time "without the knowledge, authority or consent of the plaintiff," respondent here; that no part of the notes, as aforesaid, was paid to respondent, and on the 16th day of March, 1912, he demanded possession of said stallion by virtue of the chattel mortgage, aforesaid, which was refused, whereupon respondent, on the

16th day of March, 1912, commenced this action and obtained possession of said stallion and advertised the same for sale under said mortgage, as provided by our statute, and on the 6th day of April, 1912, duly sold the same to himself for the sum of $250, being the highest bidder therefor; that the amount due on said notes at the time of said sale amounted to $543. The court also found that appellant had an agister's lien on said stallion for the amount aforesaid for keeping, feeding, and caring for the same. As conclusions of law the court found that respondent, at the commencement of this action, had a special ownership in said stallion by virtue of said chattel mortgage, and that he had a lien on said stallion, and that his lien and right to the possession thereof was superior to the lien and right of appellant. The court entered judgment accordingly. Appellant brings the case to this court by appeal, and insists that the district court erred in adjudging his agister's lien to be inferior to the mortgage lien of respondent, for the reasons (1) that under our statute creating an agister's lien appellant's lien was superior to the mortgage lien; and (2) that under our statute the chattel mortgage in question, as against appellant's claim, for the reasons hereinafter stated, was invalid, and hence respondent had no lien upon nor right to the possession of the stallion when he commenced this action.

In order to determine the first proposition, it becomes necessary to construe Comp. Laws 1907, section 1401, under the provisions of which appellant claims his lien. That section reads as follows:

"Any ranchman, farmer, agister, or herder of cattle, tavern keeper, or livery stable keeper, to whom any horses, mules, cattle, sheep, or asses shall be intrusted for the purpose of feeding, herding, pasturing, or ranching, shall have a lien upon such animals for the amount that may be due him for such feeding, herding, pasturing or ranching, and shall be authorized to retain possession of such animal until the said amount is paid."

It will be observed that the statute does not, in express terms, fix or determine the effect of the agister's lien with respect to other existing liens upon the same property. Appellant concedes that respondent's mortgage was duly and properly executed, filed, and recorded according to law before the stallion was delivered to him for the purposes before stated. Under our chattel mortgage statute, therefore, respondent's lien was prior in time. The question, therefore, is, Was it also prior in right? The question in its present form is novel in this state. Many courts of the Union, within the last twenty-five years, have, however, passed upon similar statutes, and with very few exceptions (which will be noted hereafter) they have held that the agister's lien created by the statute is inferior to the mortgage lien, provided the mortgage was executed, delivered, and filed or recorded, as required by the chattel mortgage statute before the agister's lien attached. The following cases are directly in point: *Wright v. Sherman,* 3 S. D. 290, 52 N. W. 1093, 17 L. R. A. 792; *Hanch v. Ripley,* 127 Ind. 151, 26 N. E. 70, 11 L. R. A. 61; *Sargent v. Usher,* 55 N. H. 287, 20 Am. Rep. 208; *Sullivan v. Clifton,* 55 N. J. Law, 324, 26 Atl. 964, 20 L. R. A. 719, 39 Am. St. Rep. 652; *McGhee v. Edwards,* 87 Tenn., 506, 11 S. W. 316, 3 L. R. A. 654; *Ingalls v. Vance,* 61 Vt. 582, 18 Atl. 452; *Howes v. Newcomb,* 146 Mass., 76, 15 N. E. 123; *Chapman v. Bank,* 98 Ala. 528, 13 South. 764, 22 L. R. A. 78; *Erickson v. Lampi,* 150 Mich. 92, 113 N. W. 778, 121 Am. St. Rep 607; *Blackford v. Ryan* (Tex. Civ. App.), 61 S. W. 161; *Cable v. Duke,* 132 Mo. App. 334, 111 S. W. 909; *National Bank of Commerce v. Jones,* 18 Okl. 555, 91 Pac. 191, 12 L. R. A. (N. S.) 310, 11 Ann. Cas. 1041, note 1043-4.

In the first case cited the statute was in terms precisely like ours, and in all the other cases the statute was in legal effect the same. See, also, Jones on Chattel Mortgages (5 Ed.), secs. 472, 474, where the cases are collated.

While sometimes other cases are referred to as sustaining a rule contrary to the one laid down in the foregoing

cases, yet we have been able to find only two cases that really hold to the contrary, namely, *Case v. Allen*, 21 Kan. 217, 30 Am. Rep. 425, and *Smith v. Stevens*, 36 Minn. 303, 31 N. W. 55. The latter case is, however, based upon the fact that the Minnesota statute is to the effect that if anyone having lawful possession of any live stock places it in charge of another, for the purpose of feeding and caring for it, a lien is created in favor of the latter. It is accordingly held that the possession of the mortgagor, so long as it is lawful, is sufficient to authorize him to make arrangements for feeding and caring for the live stock which is left in his possession by the mortgagee, and that under the terms of the statute the latter is bound by any reasonable arrangement that is made for the feeding and caring of the live stock, and that the mortgagee's lien is subordinate to that of the person who fed and cared for the same. That case is therefore based upon the peculiar provisions of a local statute. The only case that is based squarely upon the inherent equities, and in which it is directly held that such equities are in favor of the agister, is *Case v. Allen, supra*. In many of the cases to which we have referred *Case v. Allen* is discussed, and the courts are practically unanimous in disapproving the views therein expressed. It should not be overlooked that the chattel mortgage, if the statutory conditions with respect to the execution and delivery, filing, or recording of the mortgage are complied with, gives the mortgagee a lien upon the mortgaged property, although the mortgagor retains possession thereof. This lien, if first in time, is generally held by the courts also to be first in right. Such a lien, therefore, should not be displaced without the consent of the party in whose favor it exists, unless there is some positive statute which in terms declares the lien subordinate to another one. If such a statute exists, the mortgagee can always protect his interests in the mortgaged property by seeing to it that it is being fed and cared for. As the statute now stands, he has no such notice. The agister, on the other hand, always has ample opportunity to protect himself. He is not bound to take care of and feed anyone's live stock. Where it is

sought, however, to make arrangements for feeding and caring for another's live stock, the agister, in this day of easy and rapid communication, may always ascertain within a short period of time whether a mortgage is on file or recorded, which is a lien on the live stock in question. If none is filed or recorded, his lien is first; and if there is one filed or recorded it will disclose upon its face just who is the mortgagee and what his claim amounts to. The agister may therefore refuse to feed or care for any live stock, unless he is protected. Under such circumstances courts should not, by a strained construction, seek to protect his interests, when he himself has neglected to make any effort to do so. We are of the opinion that appellant's lien is inferior to the mortgage lien of respondent. The district court committed no error, therefore, in its conclusions of law upon that point.

Proceeding now to a consideration of the second proposition, namely: Was respondent's mortgage in force and effect, when this action was commenced, as against appellant's agister's lien? We think it was. Comp. Laws, 1907, sec. 155, is as follows:

"Every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year after the filing thereof; unless within thirty days after the expiration of the term of one year from such filing, and within thirty days after the expiration of each year thereafter, the mortgagee, his agent or attorney, shall make an affidavit exhibiting the interest of the mortgagee in the property at the time last aforesaid, claimed by virtue of such mortgage, and if such mortgage is to secure the payment of money, the amount yet due and unpaid, and shall file the same with the county recorder, to be attached to the instrument or copy on file to which it relates; provided, that no mortgage of personal property shall be valid as against creditors of the mortgagor or subsequent purchasers or mortgagees in good faith, after the expiration of five years from the date of the original filing."

Section 156 reads as follows:

"If such affidavit be made and filed before any purchase of such mortgaged property shall be made, or other mortgage deposited, or lien obtained thereon, in good faith, it shall be as valid to continue in effect such mortgage as if the same had been made and filed within the period above provided."

From the provisions contained in the foregoing sections, it is apparent that a chattel mortgage in this state continues in full force and effect for a period of thirty days after the expiration of one year from the time it was filed in the county recorder's office; and if the affidavit and statement required by the statute are filed within the thirty days mentioned therein, then the mortgage continues in full force another year, and so on until five years have elapsed. From the provisions contained in section 156, it is also apparent that the affidavit and statement required by section 155 may be filed any time subsequent to the thirty days, provided they are filed before any rights have attached to the mortgaged property. Time is therefore not of the essence, except where rights exist or are acquired against the mortgaged property before the thirty-day period has expired.

In the case at bar the affidavit and statement required by the statute were not filed at any time, and for that reason appellant contends the mortgage ceased to be of any force, as against his agister's lien, after the expiration of the year. The undisputed facts are that respondent's mortgage was duly filed on the 27th day of February, 1911. One year expired on the same day in 1912, and the thirty-day period within which the statutory affidavit and statement had to be filed to keep the mortgage alive, as against existing claims, under the statute, expired on the 28th day of March, 1912. The respondent, however, took possession of the mortgaged property to foreclose his mortgage on the 16th day of March, 1912, or twelve days before the mortgage ceased to be in full force and effect as against existing claims. Appellant, however, insists that, unless the affidavit and statement were filed within the thirty-day period, the mortgage ceased to be effective as against his lien,

upon the expiration of one year after it was first filed. The statute does not so state in terms; nor is the language used therein subject to such an interpretation. Under the language of the statute the morgage is clearly in full force and effect, as against all existing claims, for one year, and for thirty days in addition thereto, and as against after-acquired claims, up to the time such claims accrue, provided the affidavit and statement are in fact filed at any time before such claims have accrued. On the 16th day of March, 1912, when respondent took possession of the stallion under the writ of replevin, the mortgage in question was still in full force and effect, and we can see no reason why he should thereafter have filed any affidavit and statement. Such is the effect of the decisions.

In passing upon this point the Supreme Court of North Dakota, in *National Bank v. Oium,* 3 N. D. at page 212, 54 N. W. at page 1040, 44 Am. St. Rep. 533, says:

"Filing is a substitute for possession. . . . If possession is taken by the mortgagee before the period arrives at which the mortgage is required to be renewed, there is no reason why the failure to renew it should affect its validity."

In that case, as in the case at bar, no renewal affidavit was filed by the mortgagee, but he, like respondent, had taken possession before the time within which the affidavit should be filed had expired; and the court accordingly held that the failure to file the affidavit under such circumstances did not affect the validity of the mortgage, nor affect the mortgagee's right to enforce the same. This seems to us to be both good law and good sense. Why file an affidavit if it is not desired to renew the mortgage and keep it in force beyond the period that it is in full force and effect by reason of the first filing? *Frank v. Playter,* 73 Mo. 672, and *Dayton v. Savings Bank,* 23 Kan. 421, are directly in point; the only difference between those two cases and the one at bar being that the renewal affidavit and statement were required to be filed thirty days before the year expired, while under our statute, as we have seen, this was required to be

done within thirty days after the year had actually expired. The mortgages in the cases referred to, as in the case at bar, were, however, in full force and effect when the mortgagee took possession of the mortgaged property; and hence there is no difference between those cases and this one in that regard. The case of *Dayton v. Savings Bank, supra,* is referred to and approved upon this point by the same court in a later case. (*Swiggett v. Dodson,* 38 Kan. 707, 17 Pac. 594.) We have been referred to no case, and have found none, where, under a statute like or similar to ours the courts have arrived at a contrary conclusion. The district court therefore also determined the second proposition in accordance with the law.

In view of the conclusions reached, we need not pass upon the further question insisted upon by respondent, namely, that in no event does appellant come within the class mentioned in our statute which may assail the validity of his mortgage; and hence his mortgage, as against appellant's claim, is valid at all events. We express no opinion upon that question.

For the reasons stated, the judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.