[L. A. No. 5320.    In Bank.—December 31, 1917.]

MORTGAGE SECURITIES COMPANY OF CALIFOR-
NIA, Respondent, v. F. W. PFAFFMANN, Appellant.

LIEN—REPAIR OR IMPROVEMENT OF PERSONAL PROPERTY—PRIORITY OF
LIEN OVER CHATTEL MORTGAGE.—Under sections 3051 and 3052 of
the Civil Code, the possessory lien of the improver or repairer of
personal property is superior to the pre-existing lien of a chattel
mortgage.

APPEAL from a judgment of the Superior Court of Los
Angeles County.    Fred H. Taft, Judge.

The facts are stated in the opinion of the court.

Duke Stone, for Appellant.

Tobias R. Archer, for Respondent.

HENSHAW, J.—The Chatts, husband and wife, executed
to plaintiff a chattel mortgage on their automobile, the mort-
gagors retaining the possession and use thereof.    They deliv-
ered their automobile to defendant to have repair work done
thereon.    He did this work and held possession of the auto-
mobile until payment for it was made.    The Chatts violated
the terms of their chattel mortgage contract with plaintiff.
For this violation plaintiff was entitled to take possession of
the automobile and to sell it.    Its endeavor to do so was met
by the refusal of the defendant to deliver the automobile
until payment of his bill, he contending for his possessory
lien on account of the work performed.    This action was
brought to determine the respective rights of the parties and
the priorities of their liens.    The trial court decreed that the
possessory lien of the repairer was subordinate to the chattel
mortgage lien of the plaintiff and gave judgment accordingly.
From that judgment this appeal has followed.

No question arises over the validity of the chattel mortgage
as such, or over the constructive notice by recordation which
that recordation gave to the world.    The controlling sections of
our code upon the subject matter are, Civil Code, sections 3051,
3052, and 2897.    Section 3051 declares: "A person who
makes, alters, or repairs any article of personal property, at

the request of the owner, or legal possessor of the property, has a lien on the same for his reasonable charges for the balance due for such work done and materials furnished, and may retain possession of the same until the charges are paid." Here it may be said that this consideration is not complicated, as respondent urges, by the fact that the Chatts were in default under their chattel mortgage at the time they delivered the automobile to defendant for repairs. They were still the legal possessors of the automobile, and their possession continued to be legal until the plaintiff exercised its rights under its mortgage and took unto itself that possession. Section 3052 authorizes a sale in due course of the property held under possessory lien. Section 2897 declares that "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia." The trial court and the court of appeal, not without warrant, held that the lien of the chattel mortgage had priority over the possessory lien of the repairer. Not without warrant, we say, for *Wilson* v. *Donaldson,* 121 Cal. 8, [66 Am. St. Rep. 17, 43 L. R. A. 524, 53 Pac. 404], lends strong support to this view. It was because this court was not satisfied with the reasoning and conclusion of *Wilson* v. *Donaldson* that a hearing before it was ordered. At the time when *Wilson* v. *Donaldson* was decided the law with which we are concerned was identically the same as it now is, the difference being that section 3051 at the time of the decision in *Wilson* v. *Donaldson* dealt only with the first class of lienholders, those "who, while lawfully in possession of an article of personal property renders any service to the owner thereof, by labor or skill, employed for the protection, improvement, safekeeping or carriage thereof," while section 3052 dealt with the second class of lien claimants, those "who make, alter, or improve any article of personal property, at the request of the owner, or legal possessor of the property." The change that has been made has only been to group both these classes with others in section 3051 and to provide in section 3052 for the identical enforcement of the liens of all of the classes described in section 3051. *Wilson* v. *Donaldson,* however, cites both section 3051 and 3052, though the lien which was there declared to exist was a lien of the first of the designated classes, that is to say, a lien depending upon possession

and owned by one lawfully in possession who had bestowed labor for the improvement of personal property, the labor there being the harvesting of grain, the grain itself being subject to the lien of a chattel mortgage prior in time. But while our law to-day in substance gives every member of the two classes an identical possessory lien for the value of the service rendered or the work performed, and gives them likewise identical remedies in the matter of the foreclosure of the lien, no such identity of origin exists in the case of the liens themselves. The latter class, those ''who make, alter, or repair any article of personal property,'' always and in the absence of statute or even in the absence of agreement, at common law had their lien. ''By the general law, in the absence of any specific agreement, whenever a party has expended labor and skill in the improvement of a chattel bailed to him, he has a lien upon it.'' (*Jackson* v. *Cummins,* 5 Mees. & W. 342.) The reasoning, and, indeed, the quotation, relied on in *Wilson* v. *Donaldson* has to do with an agistor's lien, though it was not an agistor's lien the court had before it in *Wilson* v. *Donaldson.* But an agistor, in the absence of a special agreement, had no lien at common law, and this is very clearly pointed out in the case cited, *supra,* where it is further said: ''Now the case of an agistment does not fall within that principle [the principle of improving personal property], inasmuch as the agistor does not confer any additional value upon the article either by the exercise of any skill of his own or indirectly by means of any instrument in his possession.'' Yet, obviously, this reasoning, perfectly sound in itself, has no application to the facts presented in *Wilson* v. *Donaldson,* where the lien by the court conceded to exist was not an agistor's lien at all, but was clearly based upon the ''improvement'' of the personal property, if with propriety the harvesting of grain can be said to be an improvement. Therefore, under statutes creating agistor's liens where questions of priority arose, all the reasoning which, as we shall see, goes to support the priority of the repairer's lien was wholly absent. Thus it was said in supporting the superiority of the chattel mortgage lien over the agistor's that it was not in the contemplation of the mortgagee that the mortgagor would put the horse or the cow into an agistor's hands. Further, that when he did so the agistor by his service did not better or improve the chattel, and that as it was not therefore within

the contemplation of the mortgagee that his mortgagor should do this thing, and as the agistor had done nothing to improve the chattel, and as the general rule touching liens is that preference goes with priority, and as the mortgagor could not by any contract of his own with the agistor impair the mortgagee's rights, such liens when created by statute, unless the statute itself spoke clearly to the contrary, were to be held subordinate to a pre-existing chattel mortgage lien. But even upon this there is a conflict in authority, some courts holding that it must have been within the contemplation of the mortgagee that the mortgagor would do whatever was necessary to preserve the chattel, and that when in the matter of its preservation it was given to an agistor, it would be construed as being within the contemplation of the parties to the mortgage that the agistor, so long as he held the property, did so under a preferential lien. *Case* v. *Allen,* 21 Kan. 217, [30 Am. Rep. 425], cited in *Wilson* v. *Donaldson* as being a well-considered case upon the subject, is a case dealing only with such an agistor's lien. It is one of the cases in which the rule of construction last enunciated is declared. An examination of the authorities cited in support of the reasoning in *Wilson* v. *Donaldson* will disclose that all saving one were cases having to do with agistors' liens. The one exception is that of *Storms* v. *Smith,* 137 Mass. 201, where household goods under chattel mortgage were stored by the mortgagor, and the holding of the court was that the mortgagee in permitting the mortgagor to retain possession of the goods contemplated only the use of those goods by the mortgagor and not his storage of them, therein distinguishing *Hammond* v. *Danielson,* 126 Mass. 294, where a hack under chattel mortgage, permitted by the mortgagee to be used in a livery business, was declared to be subject to the repairer's subsequent lien upon the ground that the mortgagee must have contemplated that the hack would be kept in reasonable condition for use, and *Lynde* v. *Parker,* 155 Mass. 481, [30 N. E. 74], treating of an agistor's lien upon a horse under chattel mortgage, where it is held that even in the case of such a lien, "all the circumstances surrounding the transaction" may show that it is superior to that of the earlier chattel mortgage.

All this has been said only in illustration of the fact that this important question received inadequate consideration in *Wilson* v. *Donaldson.* It remains to be added that the ques-

tion of priority is wholly controlled by our statutory law. If by the fair intendment of that law these classes now enumerated in section 3051 of the Civil Code are given a preferential lien over the holder of an earlier chattel mortgage, we are not embarrassed in so declaring.

We are well convinced that our law does with intention make the possessory lien of the improver and of the repairer superior to the lien of the pre-existing chattel mortgage. True, it is said in *Wilson* v. *Donaldson* that if the legislature had desired to give such lien claimants priority over chattel mortgage liens, it was an easy thing to have said so, but our conviction is that it has said so and that its declaration has the support of reason and justice.   Did the legislature mean that every artisan and mechanic to whom might be delivered a chattel for improvement and repair must search the records to discover whether that article had been mortgaged and, failing so to do, be at the peril of the impairment or total destruction of his lien, or did it mean that the money lender who took for security a chattel mortgage should take it with the understanding as part of his contract that improvements and repairs placed upon the article should be subject to a preferential possessory lien?   Without hesitation we answer that the second alternative is sustainable as a just interpretation of the legislative enactments.   Under the language of the two sections it seems most manifest that such is the true construction.   Instancing but one consideration alone and that the right and power of the possessory lien claimant to sell the property, that right absolute is given him and he may exercise it so far as the statute reads without regard to the existence of the chattel mortgage and without regard to whether or not the chattel mortgage is foreclosable.   One would certainly look to see some limiting language in the law if these provisions as to the right of sale and disposition of the proceeds of the sale were to be subordinated to a preferential right on the part of the holder of a chattel mortgage, and it certainly makes more for the protection of society and for the conduct of its business to say that all of these classes of men who preserve, improve, or repair personal property should, like mechanics and artisans under the mechanic's lien law, have their liens declared preferential.   Concerning the money lender who holds the chattel mortgage, two suggestions may be briefly advanced,—one, that the possessory lien

CLXXVII Cal.—3

claimant has preserved, improved, or repaired the property upon which he has a lien, and, consequently, has added a value to the security commensurate with his just charge; the other, that the money lender desiring to take the security of a chattel mortgage can with much more readiness reduce the amount of his loan to protect himself against the possible liability of a possessory lien than can the work-a-day artisan take the time to inspect the records to see whether such chattel mortgage exists against the property.

Besides reason, there is no lack of authority to support this construction of our law. The law of Wisconsin is identical with our own, and in *Smith* v. *Kaestner,* 164 Wis. 205, [159 N. W. 738], the supreme court of Wisconsin declares the same construction and supports it with abundant authority.

The judgment appealed from is therefore reversed.

Melvin, J., Sloss, J., Victor E. Shaw, J., *pro tem.,* and Angellotti, C. J., concurred.