[Sac. No. 3723. In Bank.—February 21, 1927.]

THE FIRST NATIONAL BANK OF LOS ANGELES (a Corporation), Appellant, v. CHARLES F. SILVA et al., Respondents.

[1] LIENS—PRIORITY—CONSTRUCTION OF SECTION 2897, CIVIL CODE.— In order to determine the priority of different liens upon the same property, under section 2897 of the Civil Code, it is necessary to determine whether "other things are equal," aside from the time of their creation.

[2] ID.—CONTRACT LIEN—STATUTORY LIEN—DETERMINATION OF PRIORITY—CONSTITUTIONAL LAW.—Where a lien is created by contract and a subsequent lien is created by reason of an existing statute, the wording of the statutes or codes determines the question of priority, as the contract lien is presumed to have been created with knowledge of the law; and if a statute existed providing for the creation of liens and determining their priority at the time of the creation of the contract lien, no constitutional provisions are violated by giving precedence to a subsequently acquired statutory lien over a prior contract lien.

[3] ID.—SECTION 3051, CIVIL CODE—CONSTRUCTION OF.—There is no difference in the legal meaning of the language used in section 3051 of the Civil Code in reference to the different liens there provided for, including agistors' liens, although there is some difference in the actual language used, and the lien is dependent upon the possession of the article upon which it is claimed and possession may be maintained until the lien is discharged by payment.

[4] ID.—SECTION 3052, CIVIL CODE—CONSTRUCTION—LIEN CLAIMANTS— REMEDIES—PRIOR CHATTEL MORTGAGE.—Since the amendment of 1907 to section 3052 of the Civil Code, the right to sell the property upon which a lien is claimed is given to any one of the several classes of persons named in section 3051 of said code, including agistors, with the same right and privilege to convert the personal property into cash, irrespective of a prior chattel mortgage, as might have been exercised by anyone claiming a lien for repairs or alterations prior to the amendment of the first section.

(1) 37 C. J., p. 329, n. 38. (2) 12 C. J., p. 1071, n. 8 New. (3) 3 C. J., p. 32, n. 62. (4) 11 C. J., p. 654, n. 12.

1. See 16 Cal. Jur. 337.
2. See 16 Cal. Jur. 338.
4. See 16 Cal. Jur. 339.

APPEAL from a judgment of the Superior Court of Madera County. Stanley Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

Flint & MacKay, Robert B. Jackson, F. W. Henderson and Joseph Barcroft for Appellant.

Sherwood Green and John W. Maloy for Respondents.

WASTE, C. J.—A petition to have this cause heard in the supreme court after judgment in the district court of appeal, third appellate district, was granted in order that further argument might be had on the question therein involved. After further consideration of the case, we are of the view that the decision of the district court of appeal was correct. The following portion of the opinion by Mr. Justice Plummer is therefore adopted as the opinion of this court:

"The facts necessary to be stated are in brief as follows: The defendant Charles F. Silva, the owner of a band of cattle, made, executed and delivered to the plaintiff a chattel mortgage thereon. Thereafter, and on the first day of September, 1923, the defendant Silva placed said cattle in the possession of the defendants Donnelly and Clark, for pasturage purposes upon pasture lands belonging to said defendants. Said cattle were pastured by Donnelly and Clark until the first day of December, 1923, and they claim an agistor's lien for the value of the pasturage in the sum of $1890. The amount of this claim is not disputed. The only question involved is whether an agistor's lien takes precedence of a prior chattel mortgage.

[1] "Section 2897 of the Civil Code, in relation to priority of liens, reads as follows: 'Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and *respondentia.*' In order to determine whether a lien takes precedence under this section, it is necessary to determine whether other things are equal. Where the lien is created by contract, there is no difficulty whatever in determining the question of priority; it is only when a lien

is created by contract and a subsequent lien is created by reason of an existing statute. [2] In the latter case, the wording of the statutes or codes determines the question of priority, as the contract lien is presumed to have been created with knowledge of the law. If the statute exists providing for the creation of liens and determining their priority at the time of the creation of the contract lien, then no constitutional provisions are violated by giving precedence to a subsequently acquired statutory lien over a prior contract lien.

[3] "Some of the cases also distinguish between what are purely common-law liens and statute liens. In this case, however, whether formerly existing as common-law liens or otherwise, a large number of liens, including the lien of agistors, are grouped together and provided for in the same section of the Civil Code. Section 3051 of the Civil Code places agistor's liens in the category which we have mentioned. We here quote: 'Every person who, while lawfully in possession of an article of personal property renders any service to the owner thereof, by labor or skill, employed for the protection, improvement, safekeeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him from the owner for such service; a person who makes, alters, or repairs any article of personal property, at the request of the owner, or legal possessor of the property, has a lien on the same for his reasonable charges for the balance due for such work done and materials furnished, and may retain possession of the same until the charges are paid; and livery or boarding or feed stable proprietors, and persons pasturing horses or stock, have a lien, dependent on possession, for their compensation in caring for, boarding, feeding, or pasturing such horses or stock; and laundry proprietors and persons conducting a laundry business, have a general lien, dependent on possession, upon all personal property in their hands belonging to a customer, for the balance due them from such customer for laundry work; and veterinary proprietors and veterinary surgeons shall have a lien, dependent on possession, for their compensation in caring for, boarding, feeding and medical treatment of animals; and keepers of garages for automobiles shall have a lien, dependent on possession,

for their compensation in caring for and safekeeping such automobiles.' There seems to be no difference in the legal meaning of the language used in reference to the different liens there provided for, although there is some difference in the actual language used. In all but one instance, the lien given is 'dependent upon possession,' while, in one instance, the language reads, 'and may retain possession of the same until the charges are paid.' While the language differs, the meaning is the same, that is, the lien is dependent upon the possession of the article upon which the lien is claimed by the one asserting the lien, and may be maintained until the lien is discharged by payment.

[4]  "Section 3052 of the Civil Code was amended in 1907, giving to every lienholder of a lien provided for in section 3051 [Stats. 1907, p. 86] of the Civil Code exactly the same rights and the same remedies. Prior to the amendment, section 3052 gave rights and remedies only to a person who had altered or repaired articles of personal property. Thus, a clear distinction was made by the legislature with regard to the remedies afforded lienholders. Since the amendment of section 3052, the right to sell the property upon which the lien is claimed is given to any one of the several classes of persons named in section 3051, with the same right and privilege to convert the personal property into cash, irrespective of the prior chattel mortgage, as might have been exercised by anyone claiming a lien for repairs or alterations prior to the amendment of the section. In the case of *Wilson* v. *Donaldson,* 121 Cal. 8 [66 Am. St. Rep. 17, 43 L. R. A. 524, 53 Pac. 404], the question involved was whether one who had harvested certain grain had a lien thereon for the charges and expenses of harvesting that would take precedence of a chattel mortgage. The court in that case, in holding that a harvester's lien did not take precedence, commented upon the character of lien which is involved in this case, and in its comments quoted from an Indiana case, there cited, the following language: 'As the agistor's lien depends alone upon the statute, it can have no greater force than the statute gives it, and as the legislature has, as we have said, manifested no intention of giving to it superiority over other liens, it can have none,' and then in relation to the lien involved in that case, further said: 'In the absence of the

200 Cal.—32

statute, the appellant would have no lien whatever. All his rights come from the statute, and therefore must be weighed and limited by the statute. If the legislature had desired to give such lien claimants a priority over contract liens, it was an easy thing to have said so.' This decision was rendered in May, 1898, since which date section 3052, Civil Code, relied upon in that case, has been amended, and the legislature has placed agistors' liens along with a number of other kinds of liens in the same class occupied by repairmen. This being true, if persons making repairs or alterations on articles of personal property, etc., have a preferential lien as against holders of chattel mortgages, and it has been so held by the courts of this state, then we can perceive no valid reason why other lienholders grouped with repairmen under section 3051, Civil Code, and given exactly the same rights and privileges by section 3052, Civil Code, should not also occupy the same preferential position, and chattel mortgages held to be executed with knowledge of the law and the possibility of statutory preferential liens in all of the cases specified in section 3051, Civil Code, as well as in one or two particular instances therein specified, especially when the language of the two sections of the code indicates that the legislature intended no such difference, and has, by the amendment of section 3052, Civil Code, explicitly placed all the lienholders there referred to upon an equality. In the case of *Mortgage Securities Co.* v. *Pfaffmann*, 177 Cal. 109 [L. R. A. 1918D, 118, 169 Pac. 1033], the Supreme Court of this state has held that, under sections 3051 and 3052 of the Civil Code, the statutory lien of one who makes repairs upon personal property is superior to the pre-existing lien of a chattel mortgage. In that case the court refers to the amendment to section 3052, Civil Code, giving the same rights and remedies to all the lienholders mentioned and provided for in section 3051, Civil Code. The case of *Wilson* v. *Donaldson*, *supra*, is also referred to and the fact pointed out that that decision was prior to the amendment, and also further states that the case of *Wilson* v. *Donaldson* cannot be treated as having been a thoroughly considered case. In neither the *Wilson* v. *Donaldson case*, nor in the case of *Mortgage Securities Co.* v. *Pfaffmann*, was the question of an agistor's lien involved.

The former related to harvesting grain, and the latter referred to repairs made upon an automobile upon which a chattel mortgage had previously been given. Both cases, however, take up and discuss agistor's liens. The Wilson case refers to the case of *Case* v. *Allen*, 21 Kan. *217 [30 Am. Rep. 425], wherein an agistor's lien is held superior to a chattel mortgage, and commented adversely on this holding, while the court in the later case of *Mortgage Securities Co.* v. *Pfaffmann* refers to the Kansas decision as a well-considered case, and entirely approves the rule there laid down. After considering and mentioning the different kinds of liens, the court in the Mortgage Securities Co. case says: 'It remains to be added that the question of priority is wholly controlled by our statutory law. If by the fair intendment of that law these classes now enumerated in section 3051 of the Civil Code are given a preferential lien over the holder of an earlier chattel mortgage, we are not embarrassed in so declaring. We are well convinced that our law does with intention make the possessory lien of the improver and of the repairer superior to the lien of the pre-existing chattel mortgage. True, it is said in *Wilson* v. *Donaldson* that if the legislature had desired to give such lien claimants priority over chattel mortgage liens, it was an easy thing to have said so, but our conviction is that it has said so and that its declaration has the support of reason and justice. Did the legislature mean that every artisan and mechanic to whom might be delivered a chattel for improvement and repair must search the records to discover whether that article had been mortgaged and failing so to do, be at the peril of the impairment or total destruction of his lien, or did it mean that the money lender who took for security a chattel mortgage should take it with the understanding as part of his contract that improvements and repairs placed upon the article should be subject to a preferential possessory lien? Without hesitation we answer that the second alternative is sustainable as a just interpretation of the legislative enactments. Under the language of the two sections it seems most manifest that such is the true construction. Instancing but one consideration alone and that the right and power of the possessory lien claimant to sell the property, that right absolute is given him and he may exercise

it so far as the statute reads without regard to the existence of the chattel mortgage and without regard to whether or not the chattel mortgage is foreclosable. One would certainly look to see some limiting language in the law if these provisions as to the right of sale and disposition of the proceeds of the sale were to be subordinate to a preferential right on the part of the holder of a chattel mortgage, and it certainly makes more for the protection of society and for the conduct of its business to say that all of these classes of men who preserve, improve, or repair personal property should, like mechanics and artisans under the mechanic's lien law, have their liens declared preferential. Concerning the money lender who holds the chattel mortgage, two suggestions may be briefly advanced—one, that the possessory lien claimant has preserved, improved, or repaired the property upon which he has a lien, and, consequently, has added a value to the security commensurate with his just charge; the other, that the money lender desiring to take the security of a chattel mortgage can with much more readiness reduce the amount of his loan to protect himself against the possible liability of a possessory lien than can the work-a-day artisan take the time to inspect the records to see whether such chattel mortgage exists against the property.'

"If by section 3052, Civil Code, the legislature, in giving the right to a repairman to sell the property on which he has made repairs without reference to the chattel mortgage, indicated its intention to say that such lien shall take precedence, we do not well see how it can be argued that other lienholders provided for in section 3051, Civil Code, and given exactly the same rights and remedies by section 3052, Civil Code, are not likewise placed in the preferential class. If it is correct that the legislature intended to say that a repairman shall have a preferential lien as against chattel mortgages, then it certainly has said the same thing as to all other lienholders grouped with the repairman and given the same standing as to rights and remedies.

"The case of *Guinn* v. *McReynolds,* 177 Cal. 230 [170 Pac. 421], where a preferential lien was denied to the county of Tulare, under section 2322a of the Political Code as it then stood in giving liens for the extermination of squirrels and other pests, did not involve a construction of section 3052,

Civil Code, and at the time of the [transactions involved in that case] there was nothing in the codes or statutes indicating that the county should have a preferential lien. It may be added that section 2322a of the Political Code has been amended and gives such lien. In *Case* v. *Allen,* 21 Kan. *217 [30 Am. Rep. 425], the Supreme Court of. that state expressly held that an agistor's lien created by statute is paramount to a lien of a prior chattel mortgage upon the same cattle, and sets forth therein fully the reasons for so holding. This case, as we have shown, was approved by the Supreme Court of this state in the Mortgage Securities Company case, which practically overruled the Wilson case. It may also be mentioned that the Wilson case was a department decision, while the Mortgage Securities Company case was a decision *en banc.* The Mortgage Securities Company case was before the Appellate Court (47 Cal. App. 383 [190 Pac. 641]), after retrial, and the judgment therein upholds the priority of the lien of the repairman. *Krantzhor* v. *Al. G. Faulkner Co.,* 43 Cal. App. 441 [185 Pac. 305], also upholds the priority of a repairman's lien over a chattel mortgage. Other cases holding that an agistor's liens take precedence may be cited as follows: *Colquitt & Baggs* v. *Kirkman,* 47 Ga. 555; *Smith* v. *Stevens,* 36 Minn. 303 [31 N. W. 55]. In line with the decision in Mortgage Securities Company case is that of *Jesse A. Smith Auto Co.* v. *Kaestner,* 164 Wis. 205 [159 N. W. 738]."

While it may be contended by appellant, the weight of authority in other jurisdictions is against giving precedence to any of the lienholders mentioned in section 3051 of the Civil Code, we are of the opinion that it is now the established rule in this state they are given preferential liens over holders of earlier chattel mortgages. It is eminently just that the rule should be applied to this case. As was said in *Case* v. *Allen, supra,* at *p. 220: "the lien of the agistor is not the mere creature of contract. It is created by statute from the fact of the keeping of the cattle. The possession of the agistor was rightful; and, the possession being rightful, the keeping gave rise to the lien; and such keeping was as much for the interest of the mortgagee as the mortgagor. The cattle were kept alive thereby; and the principle seems to be that where the mortgagee does not take the possession,

but leaves it with the mortgagor, he thereby assents to the creation of a statutory lien for any expenditure reasonably necessary for the preservation or ordinary repair of the thing mortgaged. Such indebtedness really inures to his benefit. The entire value of his mortgage may rest upon the creation of such indebtedness and lien, as in the case at bar, where the thing mortgaged is live-stock, and the lien for food.''

The conclusion we have reached makes it unnecessary to consider the further contention of the respondents that the appellant gave express or implied consent that the bill for pasturage should constitute a lien superior to that of the chattel mortgage.

The judgment is affirmed.

Curtis, J., Langdon, J., Preston, J., Seawell, J., and Richards, J., concurred.

SHENK, J., Concurring and Dissenting.—I concur in the judgment on the ground that the record discloses that appellant assented to the creation of a statutory lien preferment as against itself. The facts were stipulated. On the first day of September, 1923, the respondents Donnelly and Clark became the lessees of 13,760 acres of land in Madera County formerly held under lease by the respondent Silva. While in possession of the premises Silva had mortgaged some 700 head of cattle to the plaintiff's assignor with the usual provision in the mortgage that on the default of the mortgagor the mortgagee would have the right to take possession of the mortgaged property without notice. On September 1, 1923, Silva was in default and the cattle were on said premises. On that day Donnelly and Clark notified the appellant that they were informed that the appellant had an interest in said livestock and that from September 1, 1923, a charge of one dollar per head per month would be made against the appellant for pasturage. Under date of September 5th the appellant's representative notified Donnelly and Clark that the cattle would be removed in ten days. They were not removed and when on November 22, 1923, their possession was demanded by the appellant such possession was refused on account of nonpayment of pasturage charges. Under these circumstances the implied consent of the appellant that pasturage charges would accrue

and the lien thereof attach would seem to have been satisfactorily shown.

But I cannot agree that under our law an agistor's lien has priority over a pre-existing recorded chattel mortgage. It is conceded that an agistor's lien did not exist at common law and the well-established rule is not questioned that under a statute which creates a lien which did not exist at common law such lien has no priority unless plainly authorized by the statute which creates it.  Sections 3051 and 3052 of the Civil Code do not expressly create a preference as to the liens provided for in section 3051, and, in my opinion, such preference is not fairly implied from the language used.  As to those which were liens at common law no difficulty is encountered, for under established rules they may be accorded priority.  Such a lien was involved in *Mortgage Securities Co.* v. *Pfaffmann,* 177 Cal. 109 [L. R. A. 1918D, 118, 169 Pac. 1033], where it was declared that under the sections of the code referred to the possessory lien of the repairer of personal property was superior to the lien of a pre-existing chattel mortgage.  One who made, altered, or repaired an article of personal property had a lien at common law and the Pfaffmann case was necessarily limited in its effect to a repairman's lien.  Nothing else was there involved or decided.  That case recognized that the agistor had no lien at common law.  In commenting upon such a lien it was there definitely stated that "under statutes creating agistor's liens where questions of priority arose, all the reasoning which . . . goes to support the priority of the repairer's lien was wholly absent."  This for the reason that the agistment does not fall within the principle of improving personal property.  The main opinion recognizes that the weight of authority in other jurisdictions is against the preferment of the agistor's lien.  The rule is stated in 11 Corpus Juris, at page 652, with a citation of some forty-two cases from twenty-one states and the respondents have cited no authority to the contrary except *Case* v. *Allen,* 21 Kan. 217 [30 Am. Rep. 425], which, in *Wilson* v. *Donaldson,* 121 Cal. 8 [66 Am. St. Rep. 17, 43 L. R. A. 524, 53 Pac. 404], was stated to be a well-considered case upholding the priority of an agistor's lien provided by statute.  But the supreme court of Kansas in *Bank* v. *Brecheisen,* 65 Kan. 807

[70 Pac. 795], was at pains to limit the effect of *Case* v.
*Allen,* and the supreme court of Utah (*Grubb* v. *Lashus,* 42
Utah, 254 [129 Pac. 1029]) correctly says that courts are
practically unanimous in disapproving the views expressed
in *Case* v. *Allen.* So it may properly be said that the over-
whelming weight of authority elsewhere is that an agistor's
lien has no priority over a pre-existing chattel mortgage un-
less given such by statute. The main opinion declares that
it is now the established rule in this state that the lienholders
mentioned in section 3051 of the Civil Code have preferential
liens over prior chattel mortgages. In my opinion this may
not rightly be said. Rather should it be said that only such
liens provided for in said section as were liens at common
law should have such preference. As has been pointed out,
such a common-law lien confirmed by statute was involved
in the Pfaffman case and the reasons for its priority were
there declared to be wholly lacking in the case of an agist-
ment. Fifteen days after the decision in the Pfaffmann case
this court decided in *Guinn* v. *McReynolds,* 177 Cal. 230
[170 Pac. 421], that prior to 1917 section 2322a of the
Political Code, which gave a lien and substantially the
same right of foreclosure thereof as section 3052 of the Civil
Code, did not prefer the lien therein created to a pre-existing
chattel mortgage. Section 2322a was later amended to grant
such preference. In *Guinn* v. *McReynolds* reference is made
to many instances in which the statutes of this state have
declared particular liens created to be prior and always with
plain language to that effect. In neither section 3051 nor
section 3052 is the priority of an agistor's lien declared and
there is no case in this state and no well-considered case
elsewhere granting such preferment in the absence of statu-
tory authority.