[Crim. No. 6418. Second Dist., Div. One. Apr. 10, 1959.]

THE PEOPLE, Respondent, v. ROBERT DAVID WHEARTY et al., Appellants.

Morris Lavine for Appellants.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County defendants were accused of violating section 245 of the Penal Code in that on or about February 13, 1958, they committed an assault upon Harold James Schlarman by means of force likely to produce great bodily injury. Trial by jury was duly waived and the cause submitted on the transcript of the testimony adduced at the preliminary examination, with each side reserving the right to offer additional evidence. No additional testimony was offered, and after reading and considering the aforesaid transcript, the court adjudged each defendant guilty of simple assault, a lesser and necessarily included offense in that charged. Defendant Whearty was denied probation and sentenced to serve a term of 30 days in the Los Angeles County jail. Defendant Dawson was sentenced to serve a term of six months in the Los Angeles County jail. Execution thereof was suspended and conditional probation granted him. From the judgment of conviction and "probation and sentence" each defendant prosecutes this appeal. Since defendant Whearty was denied probation, his attempted appeal from such an order must be dismissed (Pen. Code, § 1237) and since defendant Dawson appeals both from the final judgment of conviction and "probation and sentence" we shall, in the interest of clarity dismiss his appeal from "probation and sentence," and consider the appeal of both defendants as being from the final judgment of conviction.

Since neither defendant offered any testimony in his own behalf, we consider the following a fair epitome of the factual background surrounding this prosecution. About 2:30 a.m. on the morning of February 13, 1958, John Layman was returning home from work and driving on the Santa Ana

Freeway. As he was rounding the off-ramp at Valley View he observed an automobile in a ditch. He stopped to "see if there was anything I could do," when defendant Dawson came out of the ditch and asked the witness if the latter would get him some gasoline. They drove to some service stations, and finally obtained a small can of gasoline at a station in Buena Park. They then drove back to the stalled vehicle and poured gasoline into the tank and the carburetor. When the car did not start, defendant Dawson asked Layman if he would drive the latter and defendant Whearty back to Dawson's house. The three men then drove in Layman's car to Dawson's house. They went inside the house and defendant Dawson said he was going to call a tow truck. He dialed the number of a tow truck company which he knew, and then asked Layman to tell the exact location of the car.

Layman told the manager of the company, Harold Schlarman (the complaining witness), the exact location of the car, that he would meet him at the car, and direct him back to defendant Dawson's house. During the telephone conversation, Mr. Schlarman said he had to have cash when he brought the car. Layman then told defendant Dawson about the cash request, and Dawson said, "That's all right, go ahead and meet him." Though Layman didn't want any money for his services, the defendants wanted to give him some. In order "to avoid any trouble," since there was quite a bit of drinking done by the latter, Layman let them put a five dollar bill "in his pants." Layman then drove down to the stalled car, met Schlarman, who then followed Layman back to defendant Dawson's house. Schlarman parked the tow truck and the stalled car in front of Dawson's house.

Layman went to the door of Dawson's house and told Mrs. Dawson that the tow truck was here, and that defendant Dawson should go out to the car. Dawson told Layman to invite Schlarman into the house for a drink and he would draw a check. Layman hollered this to Schlarman who said he couldn't leave the truck and that taking a check was against the company policy. Defendants Dawson and Whearty, accompanied by Layman, then went out of the house to talk to Schlarman.

At this time defendant Dawson's car was released and the chains from the tow truck were hanging down on the street though the truck and the automobile were bumper to bumper. While discussing the taking of a check, Schlarman said he would have to tow the car back to the yard and that defendant

Dawson could come and pick it up when he could pay cash. While the argument was progressing, Schlarman managed to hook the car with the chain, though the defendants were "moving after him." Layman had said to the defendants that they should pay cash, but he never heard Dawson offer to pay in cash. Schlarman had twice previously performed towing services for defendant Dawson, and had received cash each time. After hooking the car, Schlarman went around to the truck and got in it. He rolled the window down a little bit and talked to the defendants. Before he locked the door, the defendants opened the same and dragged him out of the truck, though Schlarman managed to blow the truck horn to attract attention. One of the defendants hit him on the side of the head, and Schlarman went down. Defendant Dawson jumped on top of him and pushed his hand inside Schlarman's mouth and held the back of his head with his other hand. Defendant Whearty grabbed hold of Schlarman's left ear and back jacket and proceeded to bump Schlarman's head on the street. Layman tried to stop the struggle, but was hit in the stomach by defendant Whearty. Layman then hollered to Schlarman to get under the truck while the former went to a neighbor's house for help.

Schlarman then rolled under the truck and while he did this the defendants kicked him about four or five times in various parts of his body. Defendant Dawson then told defendant Whearty to go into the house and get a gun so they could shoot Schlarman. Dawson then went into the house and a few minutes later Whearty also went into the house. About then, the sheriff's car arrived at the house. At no time, according to his testimony, did Schlarman strike or attempt to strike the defendants. Schlarman had never met Layman previous to this date.

Carl E. Wilson, a deputy sheriff assigned to Patrol Division, Norwalk Station, was the arresting officer. When he arrived at defendant Dawson's house he observed that Schlarman's face was covered with blood and several contusions and abrasions about his face. He entered the house to arrest the defendants and noticed that both had been drinking. Deputy Wilson did not observe any cuts, bruises, or any damage whatsoever to either of the accused.

On this appeal it is the contention of appellants that when the victim herein refused to deliver defendant Dawson's automobile to him as the owner thereof, unless cash was paid for the tow service, the former "became, in effect, an embezzler or

thief of the automobile.'' That thereupon appellants ''had the right to use all necessary force to restrain him (the complainant herein).'' That therefore, since appellants were only attempting to prevent the complaining witness, Mr. Schlarman, from driving away with the property of appellant Dawson, he, with the aid of appellant Whearty, was entitled to use force in retaking the property and that the evidence is therefore insufficient to sustain the conviction of assault. However, the cases relied upon by appellants stand for the principle that the right to use force, and particularly force against the person of another, is always limited by the condition that the force must be no more than is *reasonably adequate and necessary* to the occasion. And the question of what constitutes reasonable force is a question to be determined by the trier of fact. As was said by the court in *Fawkes* v. *Reynolds*, 190 Cal. 204, 212, 213 [211 P. 499]:

''The plaintiff's contention that the verdict of the jury is erroneous because of the uncontradicted evidence that defendant used more force than was reasonably necessary cannot be sustained. The question of the amount of force justified in repelling an assault or maintaining the possession of property is one peculiarly within the province of the jury. . . .''

We have set forth above, in more or less detail, the testimony in the instant case and need not here repeat the same. Suffice it to say that the victim testified he did not strike or attempt to strike either appellant, nor was he able to offer any resistance to the attack made upon him. Appellants offered no evidence to show that the assault was made in self-defense or that any resistance upon the part of the victim reasonably justified the vicious and brutal assault made upon him by appellants. The record amply supports the conclusion arrived at by the trial court that unreasonable and unnecessary force was used by appellants, and under well established rules, this conclusion may not be disturbed on appeal (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]).

There remains another ground upon which the judgment herein must be affirmed and that is that the court below could well have concluded that Schlarman (who towed appellant Dawson's automobile) had lawful possession of the same and that appellant Dawson and his aid, appellant Whearty, did not have the right to use force to regain possession, but that appellant Dawson was required to resort to legal proceedings as a remedy. It is without contradiction that appellant Dawson had authorized the victim to take posses-

sion of his vehicle and tow it to the former's home, and had agreed to pay in cash for that service. Therefore, Schlarman had legal possession of the automobile and the evidence points unerringly to the fact that he refused to relinquish possession of the vehicle until he was paid the agreed service fee in cash. Though it be assumed that Schlarman was wrong in refusing to relinquish his possession of the automobile, which possession he had legally acquired, appellants had no right to invoke force to regain possession of the vehicle, and their resort to such means, rather than legal proceedings, amounted to an assault upon Schlarman. The rule just enunciated finds support in the case of *Rogers* v. *Kabakoff*, 81 Cal.App.2d 487, 490, 491 [184 P.2d 312] which was a civil action for assault and battery. This case involved a situation wherein defendant parked his automobile on the plaintiff's parking lot. He parked the vehicle in such a way that it occupied two spaces, locked it and left it on the parking lot for the entire day. A sign on the lot announced, "Locked cars 50c." When defendant returned he handed plaintiff twenty-five cents, but the plaintiff demanded one dollar. Defendant then entered his automobile and inserted the key in the ignition. Plaintiff reached into the car and removed the key. Defendant alighted from the car and, after standing for a minute, hit the plaintiff twice in the face. This court, in holding for the plaintiff, said: "Appellant insists that his conduct was not unlawful because respondent made an excessive and unlawful charge for parking the former's automobile, and was unlawfully withholding his vehicle from him. This argument is unavailing. Appellant bailed his vehicle to respondent for parking purposes and the latter secured possession of it legally. *The fact that appellant was entitled to the right of possession of the automobile did not entitle him to take the same from respondent, who was in the actual rightful possession, by force or violence.* The rule in that regard is thus stated in *Deevy* v. *Tassi*, 21 Cal.2d 109, 118 [130 P.2d 389]:

" 'The assumed fact that Mr. and Mrs. Deevy were in default under the terms of the chattel mortgage and that Tassi had a legal right to acquire possession of some or even all of the cattle he attempted to take, does not justify the commission of assault and battery in effecting recaption. Admittedly, the Deevys' possession had been lawfully acquired. The rule is stated by the American Law Institute in Restatement of the Law (Torts, § 108, p. 240) as follows: *"The use of force against another for the purpose of recaption of a chattel, which*

*the other is tortiously withholding from the actor, is not privileged if the other's possession was rightfully acquired.''* The comment, on the same page is: ''An invasion of another's interests of personality for the purpose of regaining a chattel, the possession of which the other has rightfully acquired, is not privileged. This is so although the other's right to possession has ceased and he is therefore a wrongdoer in refusing to give the chattel up to the actor, who is entitled to the possession thereof. *Thus, if the actor has bailed his chattel to the other, he is not privileged to use force to retake it, even though the bailment is at an end and the bailee's retention of it is a conversion.'* '' (Emphasis added.)

Appellants assert that the victim Schlarman ''had no lien on it (the towed automobile)'' and therefore appellants were entitled ''. . . to use force to prevent him from the continuation of the theft of the automobile. . . .'' However, section 3051 of the Civil Code confers a lien in favor of ''Every person who while lawfully in possession of an article of personal property renders any service to the owner thereof, by labor or skill, employed for the protection, improvement, *safekeeping or carriage thereof*'' (emphasis added), and ''may retain possession of the same until the charges are paid.'' In interpreting this section, the court, in *Hessel* v. *Pickwick Stages System, Inc.*, 100 Cal.App. 682, 684 [280 P. 1016], had this to say: ''. . . the agreed facts show that the defendant S. N. Thames rendered services *in towing* of the admitted value of $61.50; thereupon his lien became a perfect lien. There is nothing in the code section (Civ. Code, § 3051) to the contrary.'' (Emphasis added.) See also Vehicle Code, section 425.

The attempted appeals from ''Probation and Sentence'' are dismissed. The judgment from which these appeals were taken, is affirmed.

Fourt, J., and Lillie, J., concurred.