**UNITED STATES of America,**
**Libelant,**

v.

**THE Fishing Vessel ZARCO, Respondent,**
**California Electric Works, Claimant.**

**No. 2320–SD–C.**

United States District Court
S. D. California, S. D.

Sept. 16, 1960.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Keith R. Ferguson, Sp.

**372**

Asst. to Atty. Gen., Graydon Staring, Atty., Admiralty & Shipping Section, Dept. of Justice, San Francisco, Cal., for libelant.

W. E. Starke, San Diego, Cal., for California Electric Works, claimant.

JAMES M. CARTER, District Judge.

This case involves conflict between a possessory lien for repair asserted by California Electric Works, hereinafter called "Electric" growing out of the repair of a generator armature belonging to and one of the appurtenances of the fishing vessel "Zarco," and a preferred ship mortgage asserted by the United States.

The facts are simple. The preferred ship mortgage held by the United States was executed on July 29, 1958, and recorded the same date, pursuant to law. The terms of the mortgage were broad enough to embrace the generator armature involved herein, since the mortgage covered "the whole of the vessel together with her engines, motors, machinery * * * apparel * * * and all appurtenances thereto belonging."

The armature was delivered to Electric on August 2, 1958, at which time Electric expended labor and materials in the sum of $1,307.54. The armature was again delivered to Electric on December 15, 1958, and Electric expended labor and materials in the amount of $875.50.

The armature is still in the possession of Electric under their claim of lien. The vessel has been foreclosed and sold by the United States under its preferred ship mortgage. The parties hereto have stipulated that the armature may be considered in the technical possession of the U. S. Marshal without prejudice to the lien rights of Electric.

*Electric's Position.*

Electric claims a possessory lien under Sec. 3051 Civil Code of the State of California, providing in part as follows:

"Every person who, while lawfully in possession of an article of personal property renders any service to the owner thereof, by labor or skill, employed for the * * * improvement * * * thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him * * *; a person who * * * repairs any article of personal property, at the request of the owner, * * * has a lien on the same for his reasonable charges for the balance due for such work done and materials furnished, and may retain possession of the same until the charges are paid; * * *."

California law has upheld the validity of this lien, People v. Whearty, 1959, 169 Cal.App.2d 524, 530, 337 P.2d 873; Hessel v. Pickwick States System Inc., 1929, 100 Cal.App. 682, 684, 280 P. 1016. Under California law a possessory lien is superior to a pre-existing lien of a chattel mortgage, Doot v. Skirving Warehouse Co., 1927, 202 Cal. 75, 79, 259 P. 81; First Nat. Bank of Los Angeles v. Silva, 1927, 200 Cal. 494, 498, 254 P. 262.

*The Government's Contention.*

The government contends that it has not only a maritime lien but one of a preferred status in that the Act, Title 46 U.S.C.A. § 953(b) provides that the properly recorded ship's mortgage "shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court."

Title 46 U.S.C.A. § 953(a) defines a preferred maritime lien to be:

"* * * (1) a lien arising *prior in time* to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter; or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage." [Emphasis added].

The government further contends that the armature could not be excepted from

the foreclosure of the ship's mortgage and is sold in satisfaction of it and that the claimed lien of Electric for repairs could not come within exceptions allotted to preferred maritime liens set forth above.

### Discussion.

■■ The loss of possession of the armature by the ship and its present possession by Electric is of no moment as having any effect on the lien created by the ship's mortgage. The Nestor, 1931, C.C.D.Me., 18 Fed.Cas. p. 9, No. 10,126 early decided that a maritime lien does not include or require possession. As stated in the Law of Admiralty by Gilmore and Black (1957) "the property, no matter how many times it may change hands remains subject to the lien * * *". (p. 490).

There is no doubt but that Electric has a maritime lien for the repairs. The Federal Maritime Lien Act, 46 U.S.C.A. §§ 971-975, clearly so provides. Sec. 971 states:

"Any person furnishing repairs * * * to any vessel, * * * shall have a maritime lien on the vessel, which may be enforced by a suit in rem * * *."

Sec. 975, Title 46 U.S.C.A. provides:

"§ 975. State statutes superseded

"This chapter shall supersede the provisions of all State statutes conferring liens on vessels, insofar as such statutes purport to create rights of action to be enforced by suits in rem in admiralty against vessels for repairs, supplies, towage, use of dry dock or marine railway, and other necessaries. June 5, 1920, c. 250, § 30, Subsec. T, 41 Stat. 1006."

Thus, Electric has a maritime lien on the *entire vessel*, regardless of its possession of the armature, but as we shall demonstrate later, it is subsequent to and subordinate of the lien of the preferred ship mortgage.

It might be argued that Sec. 975, Title 46 U.S.C.A. cited above, in its provision that the ship's mortgage act "shall supersede the provisions of all State statutes

conferring liens on *vessels*" and the further provision stating "insofar as such statutes purport to create rights of action to be enforced by suits in rem * * *" are not applicable to our factual situation. We think the section controls. The California statute, Sec. 3051 of the California Civil Code does not specifically refer to the entire vessel but it purports to create a lien on an integral part of it, the generator armature upon which the repair work was done. The allowance of an exception in instance such as this would be the death knell for the Ship's Mortgage Act—conceivably nothing but the hull would be covered. True, the State statute does not purport to confer "rights of action to be enforced by suits in rem in admiralty." We should look at results rather than express language in the statute. This is the position taken by California courts. In Stephens v. Weyl-Zuckerman Co., 1917, 34 Cal.App. 210, 167 P. 171, there was involved a lien authorized by Sec. 813 of the Code of Civil Procedure of the State of California, which purported to give a lien for the repair of vessels and the question was as to the effect upon the lien of the statute of June 23, 1910, 36 Stats. 604, entitled, "An Act Relating to liens on vessels for repairs, supplies, or other necessaries." It should be here noted that the footnote to Sec. 975, 46 U.S.C.A., states that the section is the equivalent of the Act of June 23, 1910 above referred to. The California court held that the Superior court was without jurisdiction to enforce the lien purportedly given by section 813 of the California Code of Civil Procedure. It was argued that the state statute was directed against the owner of the vessel, not the ship itself. The court found that the result was a lien on the vessel, having the effect of a proceeding in Admiralty and at page 216 of 34 Cal.App., at page 173 of 167 P. said:

"Call the action what we may— *quasi in rem*, if that be the proper designation of an action in which both the person and the *rem* itself are proceeded against—it cannot be

denied that, since by such action it is sought to make the property or thing itself liable for the debt growing out of a contract for the repair thereof, the action involves a proceeding *in rem* in the sense and to the extent that jurisdiction to enforce the lien is, under the terms of the federal statute in question, entirely and solely in the federal courts of admiralty * * *."

In the Law of Admiralty, Gilmore and Black (1957) in referring to the Federal Maritime Lien Act, state the following (p. 544):

"The Lien Act does not in terms repeal the State lien statutes: it merely 'supersedes' them 'to the extent that' they purport to create rights enforced in rem as to the types of claims which are covered by the Lien Act;" and at p. 545: "In theory the State statutes are still in force as to whatever service liens are not covered by the Lien Act or the general maritime law. In fact they are either moribund or dead."

■ The entire subject of maritime law, including its substantive as well as its procedural features, is under national control. "The Congress thus has paramount power to determine the maritime law which shall prevail throughout the country." Detroit Trust Co. v. Barlum S. S. Co., 1934, 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176. Further, as said by the Supreme Court (Chief Justice Hughes) in the Barlum case (293 U.S. at page 50, 55 S.Ct. at page 41).

"* * * The Congress undoubtedly could determine the priorities that should be recognized by the admiralty court and, having that authority, the Congress could fix the conditions upon which mortgages of ships documented under the laws of the United States should have the priority specified. The grant of jurisdiction in admiralty to entertain a suit by the mortgagee, where the mortgage complies with the prescribed conditions, in order to enforce the permitted lien against the vessel, is, after all, but a provision of suitable machinery to give effect to the rights which the Congress has created."

■ It is hornbook law that a sale of a vessel in rem passes title thereto free of all liens. The sale of a vessel in personam does not. It is therefore the pattern of the Maritime Law that in a proceeding in rem the liens are marshaled, and if there are sufficient funds all Maritime liens may participate in the order of their priority.

Here, the Ship Mortgage Act makes the mortgage a preferred lien and although Electric would have a maritime lien for services rendered, it is inferior and subsequent to the lien of the ship mortgage. The title to the armature will pass with the rest of the vessel on the foreclosure of the government lien; Electric is relegated to any proceeds of the sale remaining after the satisfaction of the government claim based upon the ship's mortgage. Electric's claimed State lien cannot affect the result.

The government will prepare findings of fact, conclusions of law and judgment in one document, serve and file within the time provided by the Rules of this court.