Filed 1/31/24  P. v. Morell CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PHILLIP LANCE MORELL,<br><br>        Defendant and Appellant. | A165502<br><br>(Contra Costa County<br>Super. Ct. No. 04002018794) |

Defendant Phillip Lance Morell assaulted his girlfriend, Jane Doe, and a jury convicted him of, among other things, injuring a cohabitant or dating partner and false imprisonment by violence.  On appeal, Morell argues the trial court's failure to instruct the jury on defense of property violated his constitutional rights to due process and to present a defense.  We disagree and affirm.

## BACKGROUND

### I.

### *The Trial*

The People charged Morell with injuring a cohabitant or dating partner (Pen. Code, § 273.5, subd. (a)[1]), assault with caustic chemicals (§ 244), and

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

false imprisonment by violence (§§ 236, 237). The information further alleged Morell had previously been convicted of assault with a deadly weapon (§ 245, subd. (a)(1)), constituting both a prior serious felony and a prior strike (§§ 667, subds. (a)(1), (d), (e), 1170.12, subd. (b)).

### A. Prosecution Evidence

Doe testified she and Morell dated for three years.[2] They lived in a Chevy Suburban sport utility vehicle (Suburban or SUV) which contained all their belongings. On the day of the incident, Morell started an argument with Doe while they were in the parking lot of a strip mall. He got out of the SUV to go to an Autozone store. Doe, who was driving, reversed the vehicle to leave, but Morell returned and asked her to not leave. When he turned back towards the store, however, Doe again tried to leave—she started to back out, but Morell jumped on the window, which caused her to hit a parked car. Morell pulled her out of the SUV by her hair and she fell to the ground. He also hit her in the face.

Morell had two backpacks in the SUV. After the altercation ended, he grabbed his things. On cross-examination, Doe testified Morell did not take his belongings when he walked away after the fight. He told her "to hold on to [his backpacks] until he got out." She then testified he took one backpack with him.

A manager for the Wells Fargo Bank next to the Autozone store had just arrived for a branch visit. He "heard a lady screaming inside a car." A man in the vehicle was "beating her up" and "she was yelling, 'Stop.' " He

---

[2] Doe did not want to testify—she was worried that if she did so, Morell could hurt her or send someone to hurt her. When testifying, Doe frequently testified she did not remember what happened.

2

called 911. "[I]t was very apparent that she was being assaulted." The fight eventually stopped and the man walked away carrying two backpacks.

The Autozone store manager testified that he heard a crash, and a customer came into the store and told him somebody had hit their vehicle. He called 911, walked out of the store, saw the customer's vehicle and then saw an SUV to his right. In the SUV, he saw a man and a woman arguing. Then things escalated. The man, whom he later identified as Morell, got out of the SUV. Morell approached the woman, whom he later identified as Doe, and dragged her out of the passenger side of the Suburban by her hair and her clothing. At some point, she fell. Morell dragged her around to the back of the vehicle, pushed her shoulders, and punched her in the face with a closed fist. She tried to dodge the hits and get out of his hands, but Morell kept grabbing her by her arms and legs. The manager saw Morell attacking Doe but did not see her attacking him. Morell was punching her as she was trying to escape. The manager yelled at Morell several times and told him the cops were coming, in an effort to stop the fighting and protect the woman.

Another Autozone store employee offered similar testimony: He saw Morell and Doe in the SUV—Doe was in the passenger seat. The employee heard yelling and screaming and watched Morell pull Doe's hair and punch her "like, more than, like, seven, eight times" while they were inside the vehicle. They were having a "heated argument" and "she was putting her hands up and everything." She tried to get out of the SUV, "but he had her." Morell "ended up getting out, and then was moving around to her and pulled her out of the car." She "was screaming and kind of getting a commotion, and then he was just telling her to shut up and then he took her out." They "went around to the other side of the truck, like, 'cause he seen that we were seeing,

3

and I think he probably seen that I was recording."[3]  The employee then "approached him" and saw Doe on the ground.  Morell was "standing above her" and "getting some punches in," and she was continuing to guard her face.  He punched her three or four times while she was on the ground.

A police officer arrived and spoke with Doe while she was sitting in the SUV.  Doe was "upset," had been "crying," was crying during parts of the interview, and was "visibly shaken."  There was a "strong odor of bleach coming from within the vehicle and her person."  Her shirt and her jeans had bleach stains.  She had some redness on the left side of her face, with bluish green bruising around the eye socket, and she had an abrasion near her elbow.  She told the officer that Morell threw bleach on her while she was seated in the driver's seat, and that it got into her mouth.

## B. Jury Instructions

Defense counsel requested the trial court give CALCRIM No. 3476 regarding defense of property; the People objected.  The court denied the request, finding that Morell and Doe were "joint possessors of the Suburban" and in that circumstance he had no right to use force even if she had been attempting to take the SUV away, which the court did not believe the evidence showed.  The court also saw no evidence that the SUV or any of the property in it was in imminent harm.  Defense counsel then requested a pinpoint instruction regarding a property owner's right to use reasonable force to protect property from damage or to retake property, which the trial court denied, reasoning there was no evidence Morell was trying to protect his property from harm or retake it.

---

[3]  The employee recorded a portion of the altercation, and the prosecution played the recording for the jury.  In the recording, Morell pushes Doe while she screams " 'Move,' " " 'Get outta here,' " " 'Leave me alone,' " " 'Get off me,' " and " 'Stop!' "

4

## II.

### *The Verdict*

The jury found Morell guilty of injuring a cohabitant or dating partner (§ 273.5, subd. (a)) and false imprisonment by violence (§§ 236, 237).  It also found Morell guilty of simple assault, a lesser included offense of assault with caustic chemicals (§§ 240, 244).

### DISCUSSION

Morell's sole claim on appeal is that the trial court's refusal to instruct the jury regarding defense of property pursuant to CALCRIM No. 3476 violated his federal and state constitutional due process rights to fair trial and to present a defense.  We address—and reject—this argument.

A defendant has a right to have the trial court "give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation]—evidence sufficient for a reasonable jury to find in favor of the defendant [citation]—unless the defense is inconsistent with the defendant's theory of the case [citation]." (*People v. Salas* (2006) 37 Cal.4th 967, 982.)  In determining whether there is such substantial evidence, the "court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*Ibid.*)  The court need not give the requested instruction where the evidence is "minimal and insubstantial.  Doubts as to the sufficiency of the evidence should be resolved in the accused's favor." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.)  We review de novo a trial court's failure to instruct on a defense. (*People v. Simon* (2016) 1 Cal.5th 98, 133.)  Because the law is unsettled on which standard of prejudice applies to an erroneous failure to instruct on an affirmative defense (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199), we apply the more rigorous standard, which requires reversal unless

5

the error is harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

Morell argues the trial court erred in failing to give CALCRIM No. 3476 because substantial evidence supported his claim he was acting in defense of his property—the SUV and his possessions within it.[4] That instruction states, in relevant part,

"The owner [or possessor] of (real / [or] personal) property may use reasonable force to protect that property from imminent harm. . . .

"*Reasonable force* means the amount of force that a reasonable person in the same situation would believe is necessary to protect the property from imminent harm.

"When deciding whether the defendant used reasonable force, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"The People have the burden of proving beyond a reasonable doubt that the defendant used more force than was reasonable to protect property from imminent harm. If the People have not met this burden, you must find the defendant not guilty of _____ <*insert crimes*>."

---

[4] In his opening brief, Morell does not contend the trial court erred in refusing to give the requested pinpoint instruction. Issues not raised in a party's opening brief are forfeited. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 353-354.) In any event, the court did not err in refusing to give the pinpoint instruction because there was no substantial evidence Doe took, or attempted to take, Morell's property by force. (See § 693; *In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)

The People argue there was no evidence to support an essential element of the defense of resisting an attempt by force to take or injure property in Morell's possession, citing section 693. We quote that section and the one preceding it, for context. Section 692 provides in relevant part, "Lawful resistance to the commission of a public offense may be made: [¶] 1. By the party about to be injured . . . . " Section 693 provides, "Resistance sufficient to prevent the offense may be made by the party about to be injured: [¶] . . . [¶] 2. To prevent an *illegal attempt by force* to take or injure property in his lawful possession." (Italics added.) Morell cites Civil Code section 50—concerning defense of property—which states in relevant part, "Any necessary force may be used to protect from *wrongful injury* the person or property of oneself . . . ." (Italics added.)

We agree with the People and conclude the trial court got it right. There was no evidence of any "illegal attempt by force to take or injure property in [Morell's] lawful possession" (§ 693) or of any imminent threat of harm by Doe to his property (CALCRIM No. 3476).

First, as to the Suburban, Doe was within her legal rights in occupying the SUV she had purchased and Morell apparently jointly owned. Further, there was no indication that Doe posed any threat of imminent harm to the SUV. Second, as to Morell's backpacks and other belongings inside the SUV, the evidence indicated both parties kept their belongings in the SUV because they were homeless and living in it. There was no evidence that Doe made any effort, involving force or otherwise, to remove Morell's backpacks from the vehicle, to take them from Morell, or to interfere with any attempt by him to remove them from the Suburban. Nor is there evidence of any risk that she was about to damage the backpacks or any other property of Morell's.

7

Absent evidence that Doe posed an imminent threat of harm to any property in Morell's possession or was engaged in an illegal attempt by force to take or injure it, there was no substantial evidence supporting the defense of property statutes. The limits of the defense are established. " 'The use of force against another for the purpose of recaption of a chattel, which the other is tortiously withholding from the actor, is not privileged if the other's possession was rightfully acquired.' " (*Deevy v. Tassi* (1942) 21 Cal.2d 109, 118; see *People v. Whearty* (1959) 169 Cal.App.2d 524, 528-529 [judgment of assault affirmed where defendants assaulted victim, who towed car belonging to one defendant at that defendant's request, when victim refused to relinquish car unless defendants paid required fee]; *Rogers v. Kabakoff* (1947) 81 Cal.App.2d 487 [affirming judgment against driver who assaulted parking lot owner when latter refused to return driver's vehicle without payment of allegedly excessive fee, because lot owner had acquired possession of the vehicle legally when driver entrusted it to him]; Rest.2d Torts, §108 ["The use of force against another for the purpose of recaption of a chattel which the other is tortiously withholding from the actor is not privileged if the other's possession was rightfully acquired"].)

Finally, even if there had been substantial evidence supporting the defense we would affirm for the further reason that the trial court's refusal to give the instruction was harmless beyond a reasonable doubt under the *Chapman* standard. That is because, regarding another element of the defense, that the force used by the defendant be "reasonable," no reasonable juror could have found Morell's brutal attack on Doe was reasonable. Morell punched Doe multiple times while the two were inside the SUV—after it was parked and Doe was in the passenger seat with no control over the vehicle—and then dragged her out of the vehicle by her hair and her clothing.

8

He then continued to assault Doe—he pushed her onto the ground, stood over her and repeatedly punched her, and prevented her from getting away by grabbing and holding her legs and arms.

That the jury convicted Morell of the offenses—which required the prosecution to prove he used violence and inflicted a traumatic injury—demonstrate the jury would not have interpreted his actions as a reasonable measure to prevent his property from being taken. The jury was instructed on the crimes' elements, including false imprisonment by violence (§§ 236, 237), which defined "violence" as "using physical force that is greater than the force reasonably necessary to restrain someone." The jury necessarily rejected any notion that Morell's use of force was reasonable. Even if the trial court had given CALCRIM No. 3476, we conclude beyond a reasonable doubt that the jury would have found that Morell used more force than was reasonably necessary to protect his property from imminent harm.

Because we "can conclude beyond a reasonable doubt that 'the jury verdict would have been the same' had the jury been instructed on" defense of property (*People v. Brown* (2023) 14 Cal.5th 453, 474), the refusal to give such instruction was not prejudicial and did not violate Morell's constitutional rights.

## DISPOSITION

The judgment is affirmed.

9

_____
STEWART, P. J.

We concur.

_____
RICHMAN, J.

_____
MAYFIELD, J. *

*People v. Morell* (A165502)

* Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.